IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| KENNETH LEE BROWN, <br><br> Plaintiff, <br><br> v. <br><br> JESSIE WILLIAMS, <br><br> Defendant. | CIVIL ACTION NO.: 2:21-cv-2 |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Jessie Williams' Motion to Dismiss. Doc. 8. Defendant moves to dismiss based on Plaintiff's failure to exhaust his available administrative remedies. Plaintiff filed a Response, opposing Defendant's Motion. Doc. 12. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust available remedies. Doc. 8. Because I have recommended dismissal in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY

On January 4, 2021, Plaintiff filed his Complaint, asserting Defendant Williams violated his constitutional rights.[1] Doc. 1. Plaintiff claims while he was incarcerated at Long State

---

[1] On April 13, 2022, Plaintiff filed a Supplemental Complaint, seeking to add claims against Defendant Williams and other prison officials for retaliation. Doc. 15. Federal Rule of Civil Procedure 15(d) governs supplemental pleadings. Rule 15(d) provides that "on motion and reasonable notice[,]" a court may permit supplementation. Plaintiff never moved for, or otherwise received permission, to file his Supplemental Complaint. Therefore, the Court treats Plaintiff's attempt to supplement as a nullity.

Prison ("LSP"), another inmate, Franklin D. Wood, stabbed him approximately five times with a pen with a nail inside of it.[2] Id. at 5. Plaintiff alleges Wood stated he would harm someone if parole was not granted. Id. at 6. Plaintiff, as well as other inmates, warned Defendant Williams about the threats Wood made. Id. at 5, 8. Nevertheless, Defendant Williams did nothing to help Plaintiff (or other inmates), and Wood stabbed Plaintiff. After conducting frivolity review, the Court dismissed claims against Georgia Department of Corrections and LSP and claims for monetary damages against Defendant Williams in her official capacity. Doc. 2. However, Plaintiff was permitted to proceed on his Eighth Amendment deliberate indifference claim against Defendant Williams in her individual capacity. Id.

Defendant argues Plaintiff's claims against her should be dismissed because Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. Doc. 8. Plaintiff filed a Response to Defendant's Motion to Dismiss. Doc. 12.

## DISCUSSION

**I.     Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

---

Even if Plaintiff's supplement were proper, there is nothing in this filing that would change the analysis on Defendant's Motion to Dismiss in this Report and Recommendation.

[2]     At the time Plaintiff filed his Complaint, he was incarcerated at Georgia State Prison. Since October 15, 2021, Plaintiff has again been incarcerated at LSP. Doc. 7.

2

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

3

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.   Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory

4

exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The

5

PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

6

remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.   Applying Turner

####   A.   The Georgia Department of Corrections' ("GDC") Administrative Remedies

LSP utilizes the GDC's procedure for prisoner grievances. Doc. 8-2 at 2. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Doc. 8-3. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender." Id. at 5. Listed non-grievable issues include transfers of offenders between facilities and housing assignments, program assignments, security classifications, or work assignments. Id. However, an offender may grieve a housing assignment, program assignment, security classification, or work assignment if there is an alleged threat to the offender's health or safety. Id.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 8–15. Under SOP 227.02, original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Id. at 8. The Warden has 40 calendar days to respond to a grievance. Id. at 11. If the inmate is dissatisfied with the Warden's response to his original grievance, or if the time allowed for the Warden's response has expired, an inmate may appeal the decision to the Central Office. Id. at 11, 14. An inmate has seven days from the date of the Warden's response to file a Central Office

Appeal. Id. at 14. The Commissioner has 120 days to respond to the Central Office Appeal. Id. at 15. After filing a Central Office Appeal and receiving a response, the grievance procedure is complete. Doc. 8-2 at 5.

### B.  Plaintiff Failed to Exhaust His Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. The parties' allegations do not conflict, as Plaintiff admits he did not file a grievance related to the allegations in this lawsuit. Doc. 12 at 2–3. Instead, Plaintiff argues the grievance process is unavailable because it prohibited him from filing a grievance related to the threat posed by Wood. Plaintiff contends the grievance policy prohibits grievances concerning transfers, like the transfer of Wood to LSP, and Plaintiff could not file a grievance because the threatening statements made by Wood were generalized, rather than specifically directed at him. Id. at 2.

Plaintiff's interpretation of the grievance policy is incorrect. While Plaintiff may not have been able to grieve Wood's transfer to LSP, he could have filed a grievance about the threats Wood made and a grievance about Williams' purported deliberate indifference. Plaintiff contends he was prohibited because the threats were not directly made about him. But the SOP does not require the threats be made directly to any person, so long as the issue affects the offender personally. Doc. 8-3 at 5. Because the general threats Wood made impacted Plaintiff's personal safety, filing a grievance was not barred by the policy. Indeed, Plaintiff seems to acknowledge Wood's threats created concerns for Plaintiff's personal safety, as Plaintiff reported the threats to Defendant Williams and other prison officials. Doc. 12 at 2. Moreover, Plaintiff's belief he could not file a grievance about the threat Wood posed or Williams' alleged deliberate

8

indifference is not enough. A prisoner's subjective belief the grievance process cannot adequately address his claims does not operate as a waiver of the exhaustion requirement. See Higginbottom, 223 at 1261 ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile."); Simpson v. Allen, No. 6:15-cv-118, 2016 WL 5024226, at *7 (S.D. Ga. Sept. 16, 2016) ("Plaintiff could not simply disregard the grievance process and then argue, after the fact, that if he had filed a grievance, it would have been rejected.").

Similarly, while Plaintiff could not grieve Wood's transfer to LSP, he could file a grievance about Wood's housing assignment. The SOP generally prohibits grievance about housing assignments. Doc. 8-3 at 5. However, the SOP explicitly provides an exception to the general prohibition on housing assignments if there is an alleged threat to the offender's health or safety. Id. Additionally, no provision of the grievance policy prohibited Plaintiff from filing a grievance about Defendant Williams' alleged deliberate indifference after Wood stabbed Plaintiff, which is the claim pending in this case. Plaintiff does not explain why he did not file a grievance about Defendant Williams' alleged conduct after he was attacked by Wood.

Finally, Plaintiff's argument administrative remedies were unavailable because the grievance policy does not provide for monetary remedies fails. An inmate is still required to exhaust under the PLRA even where the plaintiff only seeks monetary damages and the grievance process bars such a remedy. Booth v. Churner, 532 U.S. 731, 741 (2001) (holding the PLRA requires exhaustion even if the plaintiff seeks only monetary damages and the grievance process does not permit such relief). "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." Varner v. Shepard, 11 F.4th 1252, 1262 (11th Cir. 2021) (quoting Booth, 532 U.S. at

739)). Simply because the GDC grievance procedure would not provide Plaintiff with monetary relief does not excuse him from the exhaustion requirement.

Therefore, under Turner step one, I conclude Plaintiff failed to exhaust his available administrative remedies before bringing suit. Consequently, the Court should **GRANT** Defendant Williams' Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.

## IV.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when she seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his administrative remedies. Doc. 8. Because I have recommended dismissal in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 11th day of July, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA